UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAYVEON JACKSON,

    Plaintiff,

v.

LORI GIDLEY,

    Defendant.

                                /

Case No. 2:15-cv-10669

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (document no. 1), DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

    Petitioner Trayveon Jackson ("Jackson") was convicted in the Saginaw Circuit Court after he pled no contest to assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony. Mich. Comp. Laws § 750.227b. He was sentenced under the terms of a plea agreement to 7 years and 6 months-to-40 years for the assault conviction and a consecutive 2 years for the firearm conviction. Jackson now brings a petition under 28 U.S.C. § 2254, raising two claims: (1) Jackson's defense counsel coerced his plea by representing that Jackson would be convicted if he stood trial, and (2) Jackson was denied the effective assistance of counsel for failing to challenge the validity of Jackson's statement to police. The Court finds that Jackson's claims are without merit, and will deny his petition. The Court will also deny Jackson a certificate of appealability and permission to proceed on appeal *in forma pauperis*.

## BACKGROUND

    The case began with a shooting in Saginaw, Michigan. At the preliminary examination, Jackson's acquaintance, Julian Allen ("Allen"), testified that he saw Jackson with a

handgun at his house on the afternoon of March 10, 2012. Allen saw three people walking down the street at the time. Allen testified that he heard Jackson say that the three people were from Chicago, and he had a problem with them a while ago. Allen heard Jackson "rack" the gun and saw him go outside. Allen then heard three gunshots.

Twelve-year-old Rodney Norals ("Norals") testified that he was one of the three people walking down the street near Allen's house with his two cousins. Norals stopped to talk to a girl. Norals testified that he heard three gunshots and tried to run, but he had been hit by a bullet and fell to the ground.

The physician who treated him testified that if the bullet was just slightly higher, it would have severed a main artery and Norals would have died. The police recovered a .40 caliber casing near the back door of Allen's house — directly across the street from where Norals was shot.

The police located Jackson at a house in another part of the city the next day. Jackson was taken to the police station for questioning. During the interview, Jackson asked to use the restroom. He yelled out from the restroom to an officer, "how much time am I going to get?" Hrg. Tr. 9–10 (Sep. 25, 2012), ECF No. 8-5. The officer responded that he did not know, and then Jackson indicated that he would show the officer where he hid the gun. Jackson then led the police to the gun, which was located in a kitchen cupboard at another house. The gun matched the description given by Allen.

Jackson was subsequently charged with three counts of assault with intent to commit murder, carrying a dangerous weapon with unlawful intent, carrying a concealed weapon, and three counts of felony firearm. The assault charge carried a possible maximum sentence of life imprisonment.

Jackson initially elected to be tried by a jury. Prior to trial, the court held an evidentiary hearing on the voluntariness of Jackson's statements to police. After the questioning officer testified, the court took a recess and spoke with counsel in chambers. When court resumed, the parties indicated that a plea agreement had been reached.

The prosecutor indicated that it was willing to enter into the agreement only because Jackson had cooperated and led them to the loaded gun. He indicated that the ballistics report had come back on the gun, but he was still waiting for the fingerprint and DNA analysis.

The plea agreement between the parties called for Jackson to plead no contest to one count of assault with intent to commit murder and one count of possession of a firearm during the commission of a felony. The prosecutor agreed to dismiss the remaining counts. The plea agreement also included a sentencing agreement for a minimum sentence of 7 years and 6 months on the assault charge, which was below the preliminary calculation of the sentencing guideline range.

After entry of Jackson's plea, the trial court sentenced him in accordance with the agreement to a term of 7 years and 6 months-to-40 years for the assault conviction, and a consecutive 2 years for the firearm conviction.

Jackson was appointed appellate counsel who filed a motion to withdraw the plea, for an evidentiary hearing, for resentencing, for amendment of the presentence investigation report (PSIR), and for production of the interview DVD. A hearing was held on the motion, and the trial court granted the request to amend the PSIR and to produce the interview DVD. The trial court determined that trial counsel provided effective assistance and denied the remaining motions.

Jackson then filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

> I. Defendant's state and federal constitutional rights were violated when he was coerced into taking a plea because his attorney was not acting in his best interest, failed to file motions and told him that he had no issues and that no one would believe him if he testified that he was not the shooter. And his attorney was ineffective.
>
> II. Defendant's state and federal constitutional rights were violated when he was coerced into taking a plea because his attorney was not acting in his best interest and failed to put forth his valid defense and this constitutes ineffective assistance.

The Michigan Court of Appeals affirmed Jackson's conviction "for lack of merit in the grounds presented." *People v. Jackson*, No. 316994 (Mich. Ct. App. Sept. 12, 2013). Jackson subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Jackson*, 495 Mich. 918 (2013).

## STANDARD OF REVIEW

The Court may grant a writ of habeas corpus when a state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(2). A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

4

The standard is difficult to satisfy. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Under § 2254(d), a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the [Supreme Court's] precedents." *Id.* The habeas statute is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03.

## DISCUSSION

Both of Jackson's claims challenge the constitutionality of his plea. He first argues that his attorney coerced him into accepting the plea by advising him that he would lose if he stood trial. Jackson alleges that his decision to enter his plea based on this advice was involuntarily because he was only seventeen years old and had little education. Jackson next asserts that his trial counsel's advice that he would lose at trial was ineffective. Jackson claims his counsel should have continued to pursue the suppression issue, and had he done so, his statements and the gun would have been suppressed, and he would have then prevailed at trial.

Respondent asserts that his claims are unexhausted because he failed to present his affidavit containing the factual support to the Michigan Supreme Court. Respondent argues in the alternative that the claims are without merit.

With respect to the Respondent's exhaustion argument, the Court will elect to proceed to the merits of the claims under 28 U.S.C. § 2254(d)(2), because it provides for a more straight-forward grounds for decision. *See Lambrix v. Singletary*, 520 U.S. 518, 524–25 (1997) (habeas court need not address complicated procedural defense when claims are more easily resolved on the merits).

Under clearly established Supreme Court law, a plea is voluntary and therefore complies with the requirements of the Fourteenth Amendment so long as it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748.

With respect to Jackson's claim that he was denied the effective assistance of counsel under the Sixth Amendment, the Supreme Court has set forth a two-part test. First, the Jackson must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). To demonstrate that counsel's performance fell below this standard, Jackson must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, the petitioner must also show that counsel's performance resulted in prejudice, i.e., "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Here, the trial court rendered the last reasoned decision rejecting Jackson's claims when it denied his post-judgment motion:

6

> The Court is going to deny the request to withdraw the guilty plea. . . . The Court would note that Mr. Gust is one of the finest attorneys in this county. And if he told his client that — gave him advice as to whether or not a jury would believe him, I would hope he would rely on that advice. As Mr. Gust has won as many cases as a defense attorney as anyone in this county, and does know juries and how they rule in this county.
>
> The Court did advise the defendant of all of his rights. And, certainly, he waived any rights. Waived the claim to — he gave up any claim that this plea was the result of promises or threats that he wasn't told about. His attorney not only gave him good advice, but he got a sentence that was way below the guidelines after consulting with the prosecutor. And the guidelines, I believe, were 135 to 225. And his sentence was, minimum sentence was 90 months; clearly, way below the guidelines. I don't know how he could claim ineffective assistance of counsel under those — under that agreement.
>
> But he was read all his rights. I feel he was given effective assistance in light of the plea that was taken and in light of the guideline departure that his attorney worked out. So I am denying his request.

Hrg. Tr. 4–5 (June 10, 2013), ECF No. 8-7. The decision did not result in an unreasonable application of clearly established Supreme Court law.

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). When the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20 (1992).

While it is true that Jackson was young and had a poor education, a review of the thorough plea colloquy reasonably supports the conclusion that Jackson's plea was voluntary. The trial court informed Jackson of all the trial rights he would be waiving by

7

entering his plea, and Jackson agreed. Jackson was informed that he faced up to a life sentence if convicted after a trial, and he indicated his understanding. The trial court correctly recited the terms of the plea agreement, and Jackson indicated his desire to accept the agreement and enter his plea. Jackson indicated that he had a complete opportunity to discuss the matter with his counsel. Jackson denied that anyone had threatened him in anyway to obtain the plea and that it was his own free choice to enter into the agreement. Accordingly, the record of the plea hearing allowed the state court to reject Jackson's first claim without unreasonably applying clearly established Supreme Court law.

It was also reasonable for the trial court to reject the ineffective assistance of counsel claim. The trial court had the benefit of a DVD of Jackson's interview, and it heard the testimony of the officer at the suppression hearing. The trial court determined that Jackson was properly informed of his rights before making his incriminating statement. Counsel was not ineffective for abandoning the long-shot suppression motion and instead accepting a very favorable plea offer. Extraordinary deference is afforded trial counsel in the context of plea bargaining. *Premo v. Moore*, 562 U.S. 115, 125 (2011). And here the case against Jackson was quite strong and the plea offer was generous. The state trial court did not act unreasonably when it refused to second-guess defense counsel's decision to advise his client to accept the plea bargain and forego a trial that in his judgment was likely to end with a guilty verdict. In other words, the state court adjudication of the claim was not unreasonable, and habeas relief is therefore barred under § 2254(d).

## CERTIFICATE OF APPEALABILITY

In order to appeal the Court's decision, Jackson must obtain a certificate of appealability, which requires a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Jackson has not meet the standard for a certificate of appealability with respect to his claims. The Court will therefore deny a certificate of appealability with respect to all of Jackson's claims.

The Court will also deny permission to appeal *in forma pauperis* because any appeal of this decision would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal *in forma pauperis* is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 26, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 26, 2015, by electronic and/or ordinary mail.

s/Carol Cohron

Case Manager